**Charlene L. LAWSON, Appellant–Plaintiff,**

v.

**FIRST UNION MORTGAGE COMPANY, Appellee–Defendant.**

No. 71A03–0208–CV–272.

Court of Appeals of Indiana.

April 3, 2003.

Clifford W. Shepard, Indianapolis, IN, Daniel A. Edelman, Danita V. Ivory, Edelman, Combs & Latturner, LLC, Chicago, IL, Attorney for Appellant.

Timothy J. Abeska, Joseph R. Fullenkamp, Brian E. Casey, Barnes & Thornburg, South Bend, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Charlene Lawson filed a complaint against First Union Mortgage Corporation

("First Union"), seeking recovery for violation of the Indiana Deceptive Consumer Sales Act or, in the alternative, for money had and received, regarding a documentation fee she paid for her mortgage through First Union. First Union filed a Motion to Dismiss pursuant to Indiana Trial Rule 12(B)(6). The trial court granted First Union's Motion to Dismiss. We reverse.

## Issues

Lawson raises three issues for our review, of which we find the following dispositive: whether the trial court erroneously dismissed Lawson's complaint.

## Facts and Procedural History

On July 27, 2001, Lawson obtained a $89,500.00 mortgage from First Union to purchase her house. First Union charged Lawson a $175.00 documentation fee as one of the settlement charges in connection with the mortgage.[1] Lawson paid the fee without questioning First Union regarding the fee's validity.

However, Lawson then brought action against First Union, alleging that she is entitled to the return of her $175.00. Lawson argues that the documentation fee was deceptive and unlawful. She argues that the fee is prohibited by Indiana law and by the Indiana Deceptive Consumer Sales Act and may constitute the unauthorized practice of law. First Union filed a Trial Rule 12(B)(6) Motion to Dismiss, arguing that Lawson had failed to state a claim upon which relief could be granted. The trial court granted the Motion to Dismiss and this appeal ensued.

## Discussion and Decision

Lawson argues that the trial court erred in dismissing her complaint against First Union pursuant to Trial Rule 12(B)(6). We agree.

## I. Standard for a 12(B)(6) Motion to Dismiss

 In reviewing a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6), our standard of review is well settled. *Town of Plainfield v. Town of Avon*, 757 N.E.2d 705, 709–10 (Ind.Ct.App.2001), *trans. denied.* A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Id.* at 710. Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party. *Id.* In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. *Id.* The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* Furthermore, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Id.*

 Here, the trial court dismissed Lawson's claim without a detailed written opinion as to the reasons for the dismissal. When a court grants a motion to dismiss without reciting the grounds relied upon, it must be presumed on review that the court granted the motion to dismiss on all the grounds in the motion. *Constantine v. City–County Council of Marion County*, 267 Ind. 279, 280, 369 N.E.2d 636, 637 (1977).

## II. Jurisdiction

 First, we must address the issue of jurisdiction. First Union alleges that, if

---

1. Lawson refers to this fee as a "documentation preparation fee," but it is clear from the exhibits that it is actually a "documentation fee". Appellant's Appendix at 181.

we find that the lay bank employees completed mortgage documents and First Union charged Lawson a fee for that work, Lawson's claim is actually a claim of unauthorized practice of law. Therefore, First Union argues that our supreme court would have exclusive jurisdiction and, if we find that the issue is the unauthorized practice of law, we must transfer to the supreme court. *See Miller v. Vance*, 463 N.E.2d 250, 251 (Ind.1984) ("This Court has exclusive jurisdiction in this case since the basic question concerns the alleged unauthorized practice of law ... and this Court is charged with the duty of supervising and controlling the practice of law in this state."). In *Miller*, our supreme court stated:

> The core element of practicing law is the giving of legal advice to a client and the placing of oneself in the very sensitive relationship wherein the confidence of the client, and the management of his affairs, is left totally in the hands of the attorney. The undertaking to minister to the legal problems of another creates an attorney-client relationship without regard to whether the services are actually performed by the one so undertaking the responsibility or are delegated or subcontracted to another.

*Miller*, 463 N.E.2d at 251 (quoting *Matter of Perrello*, 270 Ind. 390, 398, 386 N.E.2d 174, 179 (1979)).

Additionally, the *Miller* court noted that the filling in of blanks in legal instruments is not generally considered to be the practice of law:

> Generally, it can be said that the filling in of blanks in legal instruments, prepared by attorneys, which require only the use of common knowledge regarding the information to be inserted in said blanks, and general knowledge regarding the legal consequences involved, does not constitute the practice

of law. However, when the filling in of such blanks involves considerations of significant legal refinement, or the legal consequences of the act are of great significance to the parties involved, such practice may be restricted to members of the legal profession.

*Id.* (quoting *State v. Indiana Real Estate Ass'n*, 244 Ind. 214, 220, 191 N.E.2d 711, 715 (1963)). Therefore, *Miller* makes it clear that merely filling in blanks on mortgage documents is not considered the practice of law.

The issue before us today is not whether First Union engaged in the unauthorized practice of law, but rather the propriety of the fee First Union charged Lawson for its employees filling in blanks on the mortgage documents. We have jurisdiction to decide whether the fee charged was prohibited by Indiana law.

### III. *Miller v. Vance*

Lawson argues that the trial court erred in finding that First Union did not violate Indiana law by charging Lawson fees for First Union lay employees preparing mortgage loan documents. Lawson contends that *Miller v. Vance* is dispositive. In *Miller*, the Millers took two mortgages on real estate owned by the Vances to secure pre-existing debts owed them. The Millers took the mortgages with the knowledge that there were already three underlying mortgages on the Vances' property. The Millers brought a complaint to foreclose their mortgages on the Vances' property three days after it was recorded. They did not question the validity of one of the pre-existing mortgages, but argued that the other two were void and unenforceable because both mortgages were prepared by bank employees who were not attorneys. The trial court upheld the validity and the Millers appealed to our supreme court. *Id.* at 251.

Noting that the issue in *Miller* was the situation of lay employees of banks who prepare mortgage instruments, the court stated that it would be an unreasonable burden on the public to impose on banks and their employees impractical and technical restrictions which have no reasonable justification. Therefore, our supreme court held:

It is appropriate for bank employees to fill in the blanks on approved mortgage forms which have been prepared by attorneys in the same manner it is appropriate for real estate brokers to fill in the blanks on standard forms for real estate transactions.

*Id.* at 252.

The court continued:

We emphasize that there are certain limitations which apply to bank employees similar to those placed upon real estate brokers. A lay bank employee may fill in the blanks on a standardized mortgage form which has been approved by an attorney in a transaction which involves the employer bank and the bank's client. The lay bank employee may not give advice or opinions as to the legal effects of the instruments he prepares or the legal rights of the parties. *The bank may not make any separate charge for the preparation of the mortgage instrument.*

*Id.* at 253 (emphasis added). Because of this language, Lawson argues that First Union violated Indiana law by charging a documentation fee for the filling in of blanks on her mortgage instrument by a bank employee.

■ First Union argues that this language is merely dicta and does not require a different finding when a modest fee is charged. We find this argument unconvincing. The language in *Miller* is clear— a bank may not make any separate charge for the preparation of the mortgage instru-

ment. First Union argues that the holding in *Miller* merely states that when bank lay employees fill in blanks in mortgage instruments, it is not the unauthorized practice of law. However, the actual holding in *Miller* is that bank lay employees may fill in blanks in mortgage instruments without committing the unauthorized practice of law within certain limitations. *Id.* One such limitation is that the bank may not make a separate charge for the preparation of the mortgage instrument. *Id.* Therefore, whether the fee is modest or extravagant is of no relevance. The language of *Miller* prohibits any fee.

However, merely asserting that First Union charged a fee where one was prohibited by Indiana law does not carry the day for Lawson. She must state a claim upon which relief may be granted. Therefore, we look to Lawson's specific claims.

## IV. Money Had and Received

Lawson's first claim is an action for money had and received. She argues that she paid a fee where one was prohibited and therefore, she should be able to recover the fee paid. First Union argues that Lawson agreed to pay the fee and that payment of the fee was not based on mistake of fact, so Lawson cannot bring a claim for money had and received.

### A. Standard of Review

We have noted:

An action for money had and received is an equitable remedy that lies in favor of one person against another, when that other person has received money either from the plaintiff himself or third persons, under such circumstances that in equity and good conscience he ought not to retain the same, and which money … belongs to the plaintiff, and where money has been received by mistake of facts or without consideration, or upon a consideration that has failed, it may be re-

covered back. Such an action rests upon an implied promise and may be maintained against the person who received money from the plaintiff under circumstances which in equity and good conscience he should not retain.

*Shelby Eng'g Co., Inc. v. Action Steel Supply, Inc.*, 707 N.E.2d 1026, 1028 (Ind.Ct. App.1999) (quoting *Chosnek v. Rolley*, 688 N.E.2d 202, 211 (Ind.Ct.App.1997)) (emphasis omitted).

## B. Lawson's Claim of Money Had and Received

Lawson argues that she could not possibly agree to pay an unlawful fee. She directs our attention to *Michener v. Watts*, 176 Ind. 376, 96 N.E. 127 (1911), which states:

Where, however, a contract is prohibited by a positive statute, enacted to protect the vendee as against the vendor ... the parties have been held not to be in pari delicto, and the person for whose protection the statute was enacted has been permitted to recover the money or property parted with by him.

*Id.* at 127. Lawson asserts that because First Union was prohibited from charging a fee for their lay employees filling in blanks on mortgage documents, she is permitted to recover the money she paid for such a fee.

 First Union argues that Lawson paid the fee voluntarily and therefore, cannot now recover. In *Time Warner Entm't Co., L.P. v. Whiteman*, 741 N.E.2d 1265 (Ind.Ct.App.2001), this court stated:

The general rule is that a voluntary payment made under a mistake or in ignorance of law, but with a full knowledge of all the facts, and not induced by any fraud or improper conduct on the part of the payee, cannot be recovered back.

*Id.* at 1270 (quoting *City of Evansville v. Walker*, 162 Ind.App. 121, 318 N.E.2d 388, 389 (1974)). Therefore, the voluntary payment rule does not apply where the payee was induced by fraud or improper conduct. In this case, Indiana law prohibited the fee First Union charged Lawson. Therefore, the voluntary payment rule does not apply in the face of such improper conduct.

 Additionally, First Union argues that the existence of an express contract precludes recovery on the equitable theory of money had and received. *See Shelby Eng'g*, 707 N.E.2d at 1028; *see also Huff v. Biomet, Inc.*, 654 N.E.2d 830, 837 (Ind. Ct.App.1995), *abrogated on other grounds* by *St. Vincent Hosp. & Health Center, Inc. v. Steele*, 766 N.E.2d 699 (Ind.2002), ("When the rights of parties are controlled by [a] contract, recovery cannot be based upon a theory implied in law.").

However, Lawson directs our attention to *Straub v. B.M.T.*, 645 N.E.2d 597 (Ind. 1994), in which our supreme court stated:

There are instances, however, in which an agreement is not an enforceable contract despite proper formation. Where a properly formed agreement contravenes the public policy of Indiana, for instance, courts have traditionally said it is void and unenforceable.

*Id.* at 598. Although *Huff* does state that recovery cannot be based upon a theory implied in law when the parties are controlled by a contract, the decision also states that this is only true when the contract is valid. *Huff*, 654 N.E.2d at 837. The contract at issue contains a provision—namely, the documentation fee provision—which is prohibited by Indiana law. First Union cannot use a prohibited provision to preclude recovery under an equitable claim.

Finally, we note that First Union never alleged that the documentation fee was for anything other than a charge for the filling

in of blanks on mortgage documents by lay bank employees. There may well be legitimate reasons for charging a documentation fee in connection with mortgage documents, but First Union never alleges that the fee is for any legitimate reason.

 However, we also note that this case is before us on the granting of a 12(B)(6) Motion to Dismiss and not on a Motion for Summary Judgment. The issue on a 12(B)(6) is merely that if the plaintiff proves the allegation in the complaint, does the complaint then state a cause of action. Because of the constraints of a 12(B)(6) argument, First Union would not have presented evidence of the actual reason behind the fee. There may have been legitimate reason for the fee, but such a reason would not have been pled here.

Because we hold that the trial court erred in dismissing Lawson's claim for failure to state a claim upon which relief could be granted in connection with her money had and received claim, we need not address whether Lawson properly asserted a claim under the Indiana Deceptive Consumer Sales Act.

### Conclusion

The trial court erred in dismissing Lawson's complaint on a 12(B)(6) Motion to Dismiss. Lawson presented a claim upon which relief could be granted—namely, the equitable relief of money had and received. We reverse the trial court's dismissal and remand for proceedings consistent with this opinion.

Reversed and remanded.

BAILEY, J., concurs.

DARDEN, J., concurs with opinion.

DARDEN, Judge, concurring.

I concur with the majority. However, I write to express that I believe Lawson carried the day on her first claim for relief when she asserted that First Union, allegedly, charged a "documentation fee" in violation of our supreme court's holding in *Miller v. Vance*, 463 N.E.2d 250 (Ind. 1984). Her additional claim for "money had and received" is an alternative claim for relief.