**Robert REICH, Appellant–Plaintiff,**

v.

**LINCOLN HILLS CHRISTIAN CHURCH, INC., Appellee–Defendant.**

No. 31A01–0708–CV–365.

Court of Appeals of Indiana.

June 3, 2008.

Susan Schultz, Corydon, IN, Attorney for Appellant.

Richard T. Mullineaux, Crystal G. Rowe, Kightlinger & Gray, LLP, New Albany, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Robert Reich, who had a remainder interest in a property, and Lincoln Hills Christian Church, Inc. entered into a written agreement for the exchange of two properties. Reich's mother, who had a life

estate in the property, did not sign the agreement. When the church did not follow through with the agreement, Reich sued for specific performance, and Lincoln Hills filed a motion to dismiss. Reich now appeals the trial court's Indiana Trial Rule 12(B)(6) dismissal of his complaint. Because the written agreement neither describes with reasonable certainty each party and the land nor states with reasonable certainty the terms and conditions of the promises and by whom the promises were made in violation of Indiana's Statute of Frauds, we affirm the dismissal of Reich's complaint.

### Facts and Procedural History

On August 24, 2005, Reich and Lincoln Hills entered into the following written agreement:

These are the basic agreements voted on by the Eldership of Lincoln Hills Christian Church on Sunday August 14, 2005. Will trade Reich property for:

1. Shuck Property[.]

2. With property line as discussed with Webster Oglesby: Elders walked onto the property and agreed with the new property line discussed between Mr. Reich and Mr. Oglesby.

3. A chain-link fence (6 feet high) to be constructed along the above property line by a contractor chosen by Mr. Reich, cost to be shared equally.

4. Lincoln Hills to pay all Reich attorneys fees.

5. Lincoln Hills to pay all closing costs.

6. Lincoln Hills to pay survey costs.

7. Lincoln Hills to pay any back taxes.

8. Lincoln Hills to pay all moving expenses, and choose the mover.

9. Forty Thousand dollars to be paid [to] Mr. Reich.

Appellant's App. p. 7. The agreement is signed by Reich and Webster Oglesby as "Senior Minister" for the church. *Id.*

Nearly one year later, on June 12, 2006, Reich filed a Complaint for Specific Performance and Notice of Lis Pendens, in which he described the Shuck Property and claimed an interest in it. In his complaint, Reich alleged that the parties executed a written memorandum setting forth the specifics of their agreement and that Lincoln Hills "has refused to perform according to the terms of the agreement and has notified [him] in writing that it has withdrawn its offer." *Id.* at 6. Reich claimed that the written memorandum, which he attached to the complaint, constitutes an "offer, acceptance, and binding contract." *Id.* As such, Reich requested "[s]pecific performance of the contract." *Id.* Lincoln Hills filed an answer in which it set forth several defenses, including failure to state a claim upon which relief can be granted. In response to Lincoln Hills' requests for admissions, Reich admitted that at the time he signed the written agreement in August 2005, the Reich property was titled in his name subject to his mother Mary Reich's ("Mary") life estate but that he entered into the written agreement in his mother's presence and with her consent.[1]

On June 7, 2007, the day the case was scheduled for trial, the trial court requested a conference in chambers before trial. After discussing the nature of the case, the court "instructed counsel for the parties to submit briefs on the issue of whether [the written agreement] was an enforceable contract, given the fact that [Reich's] mother owned a life estate and did not execute the document." *Id.* at 49. Reich's counsel requested that she be permitted to

---

1. At the time Reich completed the admissions though, he said that he "presently [had] an unencumbered fee simple ownership interest" in the Reich property. Appellant's App. p. 17.

attach an affidavit from Mary that she consented to her son signing the written agreement but "was advised that was not permissible as the issue must be addressed within the four corners of the document." *Id.*

On June 14, 2007, Reich submitted his memorandum of law. The following day Lincoln Hills filed a Motion to Dismiss and Release Lis Pendens. In its motion to dismiss, Lincoln Hills argued, among other things, that because Mary did not sign the written agreement, Reich could not convey a fee simple interest to the church but rather only a remainder interest (the parties agree that it was intended that a fee simple interest would be conveyed); that the written agreement did not adequately identify the properties involved in violation of the Statute of Frauds; and that Oglesby did not have the authority to sign the written agreement on behalf of the church. On June 19, 2007, Reich filed a Motion to Strike Factual Allegation of Defendant's Brief arguing that Lincoln Hills' motion to dismiss contained facts that were not contained in the written agreement, contrary to the trial court's instructions. As such, Reich claimed that it was "inequitable for the Court to consider disputed facts as cited by [the church] as a basis for ruling on this matter without giving [him] an opportunity to respond with affidavits or other evidence to counter [the church's] claims." *Id.* at 38. Reich then asked the court to convert the motion to dismiss into a motion for summary judgment. The trial court denied Reich's motion to strike and granted Lincoln Hills' motion to dismiss and release lis pendens in a one-sentence order. Reich now appeals the dismissal of his complaint.

## Discussion and Decision

 Reich contends that the trial court erred by dismissing his complaint pursuant to Trial Rule 12(B)(6). Instead, Reich argues that the court should have treated Lincoln Hills' motion to dismiss as a motion for summary judgment and considered an affidavit from his mother that she consented to him signing the August 2005 written agreement. A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. *Charter One Mortgage Corp. v. Condra*, 865 N.E.2d 602, 604 (Ind. 2007). Thus, our review of a trial court's grant or denial of a motion based on Trial Rule 12(B)(6) is *de novo*. *Id.* When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id.* A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. *Id.* at 605.

If matters outside the pleadings are presented to and not excluded by the trial court, the motion shall be treated as one for summary judgment and disposed of as provided in Trial Rule 56. Ind. Trial Rule 12(B). In such a case, however, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Trial Rule 56. T.R. 12(B).

 On appeal, Lincoln Hills argues that the trial court's failure to convert its motion to dismiss into a motion for summary judgment and to consider Mary's affidavit is harmless error[2] because the

---

2. *See Holland v. Rizzo,* 872 N.E.2d 659, 663 (Ind.Ct.App.2007) ("Even assuming that the trial court should have considered the motion to dismiss as a motion for summary judgment and given Holland a reasonable opportunity to present evidence, . . . the trial court's fail-

written agreement does not satisfy Indiana's Statute of Frauds. The Statute of Frauds provides that a person may not bring an action involving any contract for the sale of land "unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent." Ind.Code § 32–21–1–1(b)(4). " '[A]n agreement required to be in writing must completely contain the essential terms without resort to parol evidence in order to be enforceable.' " *Schuler v. Graf,* 862 N.E.2d 708, 713 (Ind.Ct.App. 2007) (quoting *Coca–Cola Co. v. Babyback's Int'l, Inc.,* 841 N.E.2d 557, 565 (Ind. 2006)), *trans. denied.* "Thus, parol evidence may not be relied upon to provide the essential terms of a document." *Id.*

> Under the Statute, an enforceable contract for the sale of land must be evidenced by some writing: (1) which has been signed by the party against whom the contract is to be enforced or his authorized agent; (2) *which describes with reasonable certainty each party and the land;* and, (3) which states with *reasonable certainty the terms and conditions* of the promises and *by whom* and to whom the promises were made.

*Id.* (emphases added) (quotation omitted). Consequently, in order to be enforceable, the writing must describe with reasonable certainty each party and the land and state with reasonable certainty the terms and conditions of the promises and by whom the promises were made. Although the general rule is that parol evidence may not be relied upon to provide the essential

terms of a document, if a writing furnishes the means of identification, then the Statute of Frauds is satisfied and parol evidence can be admitted to complete the legal description of the property to be sold. *Id.* at 714.

As for the parties, Reich admits that at the time the written agreement was executed in August 2005 his mother Mary had a life estate in the property, yet the agreement itself does not describe with reasonable certainty either Mary or the fact that she had a life estate in the property and would have to take some additional steps to terminate her interest so that title to the property would pass in fee simple, which the parties agree is what they intended. Because the written agreement does not describe with reasonable certainty each party and does not state with reasonable certainty the terms and conditions of the promises and by whom the promises were made, the written agreement does not satisfy the Statute of Frauds.

As for the properties, the written agreement does not describe with reasonable certainty the Reich property. The agreement merely provides that the parties will trade "Reich property" for "Shuck Property." Appellant's App. p. 7. Although the agreement goes on to provide a means of identifying the Shuck Property—specifically that the Elders, Reich, and Oglesby agreed on the property line for the Shuck Property after walking on the property-the agreement simply does not provide a means of identifying the Reich property. *See id.* Accordingly, the written agreement does not satisfy the Statute of Frauds for an additional reason. *See*

---

ure to give explicit notice of its intended conversion of a motion to dismiss to one for summary judgment is reversible error only if a reasonable opportunity to respond is not afforded a party and the party is thereby

prejudiced.... The party must show how the material that would have been presented would have altered the outcome or the error is deemed harmless."), *trans. denied.*

*Schuler,* 862 N.E.2d at 714. Because the written agreement does not meet the requirements of the Statute of Frauds, the trial court's error in failing to convert Lincoln Hills' motion to dismiss into a motion for summary judgment and in failing to consider Mary's affidavit is harmless. We therefore affirm the trial court's dismissal of Reich's complaint.

Affirmed.

MAY, J., and MATHIAS, J., concur.